1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8
9  Damian Dudley,                          No. CV-15-00471-PHX-SMM (JZB)
10                    Petitioner,          **REPORT AND**
                                           **RECOMMENDATION**
11 v.
12 Charles L. Ryan, et al.,
13                    Respondents.
14

15       TO THE HONORABLE STEPHEN M. MCNAMEE, SENIOR UNITED STATES
16 DISTRICT JUDGE:
17       Petitioner Damian Dudley has filed a *pro se* Petition for Writ of Habeas Corpus
18 pursuant to 28 U.S.C. § 2254. (Doc. 1.)
19 **I.    SUMMARY OF CONCLUSION**
20       Petitioner raises twelve grounds for relief in his timely Petition. Petitioner's claims
21 are either procedurally defaulted or meritless. Therefore, the Court will recommend that
22 the Petition be denied and dismissed with prejudice.
23 **II.   BACKGROUND**
24       **a. Facts of the Crimes**
25       The Arizona Court of Appeals found the following facts as true:[1]
26
   _____
27       [1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See*
   28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir.
28 2012) (rejecting argument that statement of facts in state appellate court's opinion should
   not be afforded the presumption of correctness).

1
2
3
4
5
6
7
8
9

   In the evening of May 2, 2007, defendant followed the victim, an elderly woman, as she left the grocery store. Victim noticed the defendant and asked if he was following her. Defendant approached the victim and hit her on the side of the head. The victim fell to the ground. Defendant proceeded to kick the victim and then took her purse. Defendant removed the victim's credit cards and put the cards in his pocket. Defendant told the victim that if she got up, he would kick her again. Several nearby witnesses intervened and called 911, one witness tried to distract defendant. At the same time, victim tried to stand a couple of times, but defendant would hit her and prevent her from getting up. The victim dropped to the ground in a fetal position. Shortly thereafter, the police arrived and placed defendant in custody.

   Defendant was charged with one count of robbery, a class 4 felony, one count of kidnapping, a class 2 felony, and one count of aggravated assault, a class 6 felony. Following a jury trial, defendant was convicted of all charges.

10
11

*State v. Dudley*, No. 1 CA-CR 10-0053, 2012 WL 724059, at *4 (Ariz. Ct. App. Mar. 6, 2012).

12

### b.  Sentencing of Petitioner

13
14
15

On January 14, 2010, the court found Petitioner had two prior felony convictions and sentenced Petitioner to concurrent terms of imprisonment, the longest of which was 17 years.  (Doc. 19-1, Exs. C, D, at 14-21.)

16

### c.  Petitioner's Direct Appeal

17
18
19
20
21

On February 25, 2011, Petitioner's counsel filed an opening brief with the Arizona Court of Appeals. (Doc. 19-1, Ex. F, at 27.) Pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), counsel stated she searched the record on appeal and "found no arguable question of law that is not frivolous." (*Id*. at 37.)

22
23
24

On October 13, 2011, Petitioner filed a supplemental opening brief with the Arizona Court of Appeals. (Doc. 19-2, Ex. G, at 2.) Petitioner raised the same grounds that are alleged in Grounds One through Seven of the instant Petition.

25
26
27
28

On March 6, 2012, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. *Dudley*, 2012 WL 724059, at *4. In a response to Petitioner's Motion for Reconsideration (Doc. 19-2, Ex. I, at 40), the court found Petitioner "has not offered any credible evidence that he was not represented by counsel in his prior conviction to

overcome the presumption of regularity" (Doc. 19-2, Ex. J, at 51).

On April 3, 2012, Petitioner filed a Petition for Review with the Arizona Supreme Court. (Doc. 19-2, Ex. K, at 75.) On July 24, 2012, the Arizona Supreme Court denied review. (Doc. 19-3, Ex. L, at 2.)

### d.  Petitioner's First Post-Conviction Relief Proceeding

On August 20, 2012, Petitioner filed a notice of post-conviction relief. (Doc. 19-2, Ex. N, at 6.) On September 20, 2012, counsel appointed for Petitioner filed a notice with the court that he "completed his review of Petitioner's case and is unable to find a meritorious issue." (Doc. 19-3, Ex. P, at 14.) On October 22, 2012, Petitioner filed a *pro se* petition for post-conviction relief. (Doc. 19-3, Ex. Q, at 17.) On February 11, 2013, the trial court denied Petitioner's PCR petition. (Doc. 19-3, Ex. R, at 33.)

On March 11, 2013, Petitioner filed a *pro se* petition for review in the Arizona Court of Appeals. (Doc. 19-4, Ex. S, at 2.) On July 28, 2014, the Arizona Court of Appeals granted review but denied relief.  *State v. Dudley*, No. 2 CA-CR 2014-0217-PR, 2014 WL 3732476, at *2 (Ariz. Ct. App. July 28, 2014); (Doc. 19-9, Ex. U, at 5). On January 20, 2015, the Arizona Supreme Court denied a petition for review without comment. (Doc. 19-9, Ex. V. at 9.)

### e.  Petitioner's Federal Habeas Petition

On July 1, 2015, Petitioner filed this habeas Petition. (Doc. 1.) On September 9, 2015, Respondents filed a Limited Answer to the Petition.  (Doc. 8.)  On October 8, 2015, Petitioner filed a Reply. (Doc. 9.) Petitioner raises the following grounds for relief:

1. Petitioner's indictment violated the Sixth Amendment because it did not allege venue;

2. there were numerous errors that could not have been harmless;

3. the prosecutor failed to properly show that the admission of Petitioner's Massachusetts prior conviction for use as a sentencing enhancement did not violate his Sixth Amendment rights;

4. Petitioner's Sixth and Fourteenth Amendment rights were violated when the prosecutor referred to facts that were not proven;

5. Petitioner's constitutional rights were violated because the trial transcripts are not accurate;

6. Petitioner's Fourteenth Amendment rights were violated because Arizona's kidnapping statutes are vague and ambiguous;

7. Petitioner's preliminary hearing was vacated in violation of the Fourth Amendment, thus allowing Petitioner to be indicted on the 12th day;

8. Post-conviction relief Counsel was ineffective when counsel failed to argue trial counsel was ineffective regarding issues related to venue, a freetalk, failing to interview a witness, an undisclosed agreement, a prior conviction, and other trial issues;

9. Trial IAC: Trial counsel was ineffective when counsel did not accompany Petitioner to a 2008 freetalk with police, did not interview witness Jason Gerrich, and did not object at sentencing when the court failed to rule on a motion;

10. Counsel was ineffective by failing to object to lack of venue in indictment;

11. Appellate counsel was ineffective when counsel failed to argue Grounds One, Two, and Seven on appeal; and

12. Counsel was ineffective when counsel failed to litigate the issues in Ground Eight.

(Doc. 1.)

## III.   THE PETITION

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a).  Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2244. The Petition is timely.

### a.  Procedural Default

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the

federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet

the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 732. *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook v. Schriro*, 538 F.3d 1000, 1028 n.13 (9th Cir. 2008).

Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See also Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by

"persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

### b. Merits Review

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S.Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009). The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted). *See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires

1

2   "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in

3   justification that there was an error . . . beyond any possibility for fair minded disagreement." *Harrington v. Richter*, [] 131

4   S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131

5   S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme

6   malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

7   *Burt v. Titlow*, 134 S.Ct. 10, 15-16 (2013).

8       A state court decision is contrary to federal law if it applied a rule contradicting

9   the governing law as stated in United States Supreme Court opinions, or if it confronts a

10  set of facts that is materially indistinguishable from a decision of the Supreme Court but

11  reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

12      A state court decision involves an unreasonable application of clearly established

13  federal law if it correctly identifies a governing rule but applies it to a new set of facts in

14  a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly

15  established legal principle to a new set of facts in a way that is objectively unreasonable.

16  *See McNeal v. Adams*, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's

17  determination of a habeas claim may be set aside under the unreasonable application

18  prong if, under clearly established federal law, the state court was "unreasonable in

19  refusing to extend [a] governing legal principle to a context in which the principle should

20  have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).  However, the state

21  court's decision is an unreasonable application of clearly established federal law only if it

22  can be considered objectively unreasonable. *See, e.g.*, *Renico v. Lett*, 559 U.S. 766, 130

23  S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an

24  incorrect one. *See Renico*, 130 S. Ct. at 1862; *Cooks v. Newland*, 395 F.3d 1077, 1080

25  (9th Cir. 2005).  "That test is an objective one and does not permit a court to grant relief

26  simply because the state court might have incorrectly applied federal law to the facts of a

27  certain case." *Adamson v. Cathel*, 633 F.3d 248, 255–56 (3d Cir. 2011).  *See also*

28  *Howard v. Clark*, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S.Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). *See also Murray*, 745 F.3d at 998. Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 134 S.Ct. at 15 (internal quotation marks and citation omitted) (quoted by *Clark v. Arnold*, 769 F.3d 711, 724-25 (9th Cir. 2014)).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the AEDPA otherwise requires. *See Lafler*, 132 S. Ct. 1389-90; *Panetti v. Quarterman*, 551 U.S. 930, 953–54 (2007). Additionally, the petitioner must show the error was not harmless: "For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (internal quotations omitted).

## IV.    DISCUSSION

### a.    Ground One

Petitioner asserts that the indictment was deficient because "nowhere in the

1    indictment does the venue of where the crime took place ever appear."  (Doc. 1 at 8.)

2    Petitioner argues that the crime occurred at "3rd Ave and Camelback" and that location is

3    not listed in the indictment. (*Id*.) The Arizona Court of Appeals found the "indictment

4    here included sufficient detail to apprise defendant of the charges in order for him to

5    prepare a defense and to protect him against double jeopardy. An exact address of the

6    crime is not required. We hold the indictment was therefore legally sufficient." *Dudley*,

7    2012 WL 724059, at *1.

8         An indictment is sufficient under federal law when it charges a crime with

9    sufficient precision to inform the defendant of the charges he must meet and with enough

10   detail that he may plead double jeopardy in a future prosecution based on the same set of

11   events. *Russell v. United States*, 369 U.S. 749, 763-64 (1962).  Here, the indictment

12   alleges the crime took place in Maricopa County, Arizona, and no more is required if

13   Petitioner had sufficient notice to defend his case.  Petitioner does not allege that he was

14   unable to defend the case.  *See United States v. Hinton*, 222 F.3d 664, 673 (9th Cir. 2000)

15   (finding no prejudice where the indictment charged an incorrect location because "there

16   could have been no confusion as to what charges he would need to defend against").

17   Petitioner's claim fails.

18                **b.  Ground Two**

19        Petitioner alleges that errors committed during his trial cumulatively violated his

20   due process rights. (Doc. 1 at 9.) Respondents contend that the cumulative error doctrine

21   is not clearly established federal law. (Doc. 19 at 10.) To support this contention,

22   Respondents cite to *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)

23   ("[C]umulative error claims are not cognizable on habeas because the Supreme Court has

24   not spoken on this issue.").

25        The Ninth Circuit has held that "the Supreme Court has clearly established that the

26   combined effect of multiple trial errors may give rise to a due process violation if it

27   renders a trial fundamentally unfair, even where each error considered individually would

28   not require reversal." *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007). The Court

explained that "cumulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 927 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Petitioner is not entitled to relief on this claim. There are no individual errors, so there is no cumulative error. *See Hayes v. Ayers*, 632 F.3d 500, 525 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").

### c. Ground Three

Petitioner alleges that "nowhere in [the allegation of prior convictions] does it show Petitioner was represented by counsel" in a 1991 Massachusetts conviction, which was used to aggravate Petitioner's sentence. (Doc. 1 at 10.) The Arizona Court of Appeals rejected this claim when it found Appellant has not offered any credible evidence that he was not represented by counsel in his prior conviction to overcome the presumption of regularity. *See State v. Mccann*, 200 Ariz. 27, 31, ¶15, 21 P.3d 845; 849 (2001)." (Doc. 19-2, Ex. J, at 51.)[2]

If a defendant "seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938). A defendant "must prove the invalidity of a prior conviction by a preponderance of the evidence." *United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998). A "presumption of regularity" attaches to prior convictions offered for purposes of sentence enhancement, and a defendant must do more than merely pointing to a missing or silent trial transcript. *United States v. Mulloy*, 3 F.3d 1337, 1339–40 (9th Cir. 1993). Instead, "the petitioner must make an 'affirmative showing' that overcomes the presumption of regularity that accompanies final judgments of conviction." (*Id.*)

Petitioner asserts in his Reply that he was represented by counsel in his "unarmed

---

[2] The court of appeals issued this order in response Petitioner's Motion for Reconsideration filed after the court filed its memorandum opinion on direct appeal.

robbery Massachusetts case" but "the day that Petitioner changed his plea his counsel had a last minute emergency and could not attend his proceedings." (Doc. 25 at 22.)[3] The prosecutor also avowed to the court that Petitioner "pled to unarmed robbery" in the Massachusetts conviction. (Doc. 19-5, Ex. S, at 61.) The sentencing documents from Massachusetts state that on March 6, 1991, Petitioner entered a "plea [of] guilty to each count." (Doc. 19-6, Ex. S, at 5.) Petitioner asserts in his Petition that he "took a plea agreement." (Doc. 1 at 10.)[4]

Petitioner has failed to make an "affirmative showing" of unconstitutionality sufficient to overcome the presumption that his Massachusetts conviction is valid. Petitioner has presented nothing other than his claim, in the Petition (Doc. 1) and Amended Affidavit (Doc. 15), that he was not represented by counsel when he pleaded guilty and was sentenced.  A defendant's testimony is insufficient to overcome the presumption of regularity. *See Allen*, 153 F.3d at 1042 (finding "Allen's testimony at the 1997 resentencing hearing was insufficient to overcome the presumption of regularity").

### d. Ground Four

Petitioner alleges that the prosecutor improperly referred, in the prosecutor's opening statement, to a witness (Rhiannon Motley) who did not subsequently testify at the trial. In opening statement, the prosecutor said "Well, luckily, on that evening, Margaret Smith had four heroes that were standing by. These heroes, Michael Bryant, Jason Gerrich, Rhiannon Motley, and Heather Moses (sic) saw what was going on." (Doc. 19-10, Ex. Y, at 21.) The prosecutor later said: "And you're going to be able to hear from all the witnesses, all the heroes that were there that day."  (*Id.* at 22.) There was

---

[3] This is the prior felony conviction used to enhance Petitioner's sentence. (Doc. 19-2, Ex. C, at 16.)

[4] In a pretrial hearing, Petitioner told the court that his Massachusetts prior was the result of a trial where he was "represented by a lawyer." (Doc. 19-9, Ex. X, at 19.) Respondents rely, in part, on this avowal. (Doc. 19 at 19.) The Arizona Court of Appeals, on PCR review, found that "Dudley admitted in open court he had been represented by counsel during his out-of-state proceedings." *State v. Dudley*, No. 2 CA-CR 2014-0217-PR, 2014 WL 3732476, at *2 (Ariz. Ct. App. July 28, 2014). Petitioner's claim here is that although he was represented by counsel, his counsel was not present at the change of plea and sentencing.

no other reference to Rhiannon Motely.  The Arizona Court of Appeals ruled that the "discrepancy between the prosecutor's opening statement and the evidence presented is not grounds for reversal." *State v. Dudley*, 2012 WL 724059, at *2.

In evaluating Petitioner's due process claim, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). The state court's denial of Petitioner's due process claim is entitled to deference. *Linebaugh v. Belleque*, 385 F. App'x 751, 753 (9th Cir. 2010) (unpublished).

Petitioner's claim is meritless. The only claim made regarding Rhiannon Motley was that she would testify at the trial. Petitioner claims "the state's reference to facts never proven" violated Petitioner's rights. (Doc. 1 at 11.)  But the prosecutor never referred to any fact to which Rhiannon Motley would testify.  Importantly, the jury heard from the victim and witnesses Michael Bryant, Jason Gerrich, and Heather Monk. (Doc. 19-12, Ex. AA, at 8, 16.)  The Arizona Court of Appeal's determination that there had been no violation was not contrary to or an unreasonable application of any holding of the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

### e.  Ground Five

Petitioner alleges the trial transcripts are inaccurate and were changed "to bolster the State's case against Petitioner." (Doc. 1 at 12.) Petitioner alleges that the transcript regarding witness Jason Gerrich is "inaccurate," and statements from the victim were "added to change the evidence against Petitioner." (Doc. 1 at 12.) On direct appeal, the Arizona Court of Appeals ruled: "Upon our review of the record, we find no evidence indicating the transcripts have been tampered with or altered. Moreover, the appellate forum is not the appropriate one in which to develop facts and receive evidence. Any evidence of document tampering must be presented in a Rule 32 proceeding." *Dudley*, 2012 WL 724059, at *3. Petitioner, however, did not raise this issue in his post-conviction review petition. In his Amended Affidavit, Petitioner asserts he did not have

access to legal materials, attorney advice, and "did not submit his tampering with document argument in his petition for post-conviction relief…because he did not was to lose the issue by filing the same issue twice." (Doc. 15 at 3-6.)  In his Reply, Petitioner asserts that he was not required to raise this issue on post-conviction review after fairly presenting it on direct appeal. (Doc. 25 at 28.) Petitioner cites to *Castille v. Peoples*, 489 U.S. 346 (1989), and *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002).

To properly exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner.  *Castille*, 489 U.S. at 351. Procedural default occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. *See, e.g.*, *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). The Arizona Court of Appeals directed Petitioner to raise this issue in his post-conviction relief motion so the facts of the issue could be developed. In his Amended Affidavit, Petitioner acknowledges that he chose not to pursue this claim on PCR review because he did not want to lose it "twice." (Doc. 15 at 4.) Petitioner failed to raise the issue as directed, and thus this claim is not exhausted.  Further, the claim is now procedurally barred because Arizona Rules of Criminal Procedure, Rules 32.2(a)(3) and 32.4(a) preclude Petitioner from returning to state court to raise this claim. A successive petition for post-conviction relief would be untimely under Rule 32.4, and his claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding. *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a).

Petitioner has failed to establish a claim for default. He knowingly declined to raise the issue on PCR review, and he could have argued the issue just as he did on direct appeal. He has also failed to establish that failure to review this claim will result in a fundamental miscarriage of justice, which is that he is actually innocent of this offense. Four witnesses testified to the facts of the case, and Petitioner has not demonstrated actual innocence.  Therefore, Petitioner's claim in Ground Five is procedurally barred

from review.

### f.  Ground Six

Petitioner alleges the Arizona kidnapping statute is "vague, indefinite and uncertain" and it is vague because "it can turn a mutual combat fight into a kidnapping statute." (Doc. 1 at 13-14.) The Arizona Court of Appeals found:

> We find no ambiguity in the statute. "The 'restraint' required for kidnapping also may occur when one confines the victim without consent." *State v. Latham*, 223 Ariz. 70, 74 n. 3, ¶ 16, 219 P.3d 280, 284 n. 3 (App.2009). Thus, "the crime occurs absent any movement by the victim." *Id.* The state presented evidence at trial that defendant confined the victim without her consent. Defendant told the victim that if she got up, he would kick her again. When victim tried to stand, defendant would hit her and prevent her from getting up.

*Dudley*, 2012 WL 724059, at *3.

"[C]riminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." *Jordan v. DeGeorge*, 341 U.S. 223, 230 (1951) (citations omitted). A Petitioner may challenge a state statute on habeas review. *See McSherry v. Block*, 880 F.2d 1049, 1059 (9th Cir. 1989) (affirming state conviction on habeas review—where petitioner challenged state statute as ambiguous—because it "cannot be said under these circumstances that appellant's guilt was evaluated under a standard below that required by the Constitution"). The question is whether the Arizona court's interpretation of the kidnapping statute "was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).

Petitioner claims the kidnapping statute is vague, and it can "turn a mutual combat fight into a kidnapping statute." (Doc. 1 at 14.) In his Reply, Petitioner argues the statute "fails to alert ordinary people of what conduct is prohibited. . . ." (Doc. 25 at 37.) Petitioner was charged with a violation of A.R.S. § 13–1304(A)(3) "by knowingly restraining another person with the intent to . . . [i]nflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony." "'Restrain'

means to restrict a person's movements without consent." A.R.S. § 13–1301(2). Arizona courts have determined a kidnapping occurs when a victim is moved or confined. *See State v. Latham*, 219 P.3d 280, 283, ¶ 15 (Ariz. Ct. App. 2009) ("To satisfy the plain meaning of the kidnapping statute's restraint requirement, the defendant either must move the victim from place to place or confine the victim.").[5] The federal offense of kidnapping occurs when one "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person" in interstate/foreign commerce. 18 U.S.C. § 1201(a)(1). The federal courts have long approved similar language related to the two statutes. *See Chatwin v. United States*, 326 U.S. 455, 464 (1946) ("The act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim."). Petitioner was not in a "mutual combat fight" with the 64-year-old victim,[6] and the Petitioner's guilt was not evaluated under a standard below that required by the Constitution.

### g.  Ground Seven

Petitioner alleges his preliminary hearing was vacated in violation of the Fourth Amendment. (Doc. 1 at 15.) Petitioner argues he was arrested on May 2, 2007, but "the Superior Court granted the State's motion to continue the tenth day" and he was "subsequently indicted on the twelfth day." In Petitioner's previous § 1983 action, the Court rejected Petitioner's argument:

> In Count I, Plaintiff alleges that his Fourth Amendment rights were violated by the County Attorney's motion to continue the preliminary hearing, the court's granting of the continuance, the County Attorney's notice to vacate the continued preliminary hearing, and the court's vacatur of the preliminary hearing because Plaintiff was not afforded a prompt determination of probable cause for his arrest. Under the Fourth Amendment, there must be a reasonably prompt

---

[5] Petitioner cites to several Arizona cases (Doc. 25 at 38), but they are inapposite. *See, e.g.*, *State v. Tschilar*, 27 P.3d 331, 338 (Ariz. Ct. App. 2001) (finding "no ambiguity" in the kidnapping statute regarding lesser included offenses); *State v. Jeffers*, 661 P.2d 1105 (Ariz. 1983) (defendant not charged with kidnapping).

[6] (Doc. 19-10, Ex. Y, at 24.)

judicial determination of probable cause following a warrantless arrest "as a prerequisite to extended restraint on liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

… Plaintiff fails to state a claim for violation of his Fourth Amendment rights because a magistrate made a reasonably prompt determination of probable cause for his arrest. Plaintiff was not otherwise entitled to a preliminary hearing under the Fourth Amendment, or for that matter under the due process clause of the Fourteenth Amendment, where he was indicted by a grand jury.

*Dudley v. Maricopa Cty.*, No. CV-08-2168-PHX-SMM LOA, 2009 WL 32412, at *4 (D. Ariz. Jan. 5, 2009).

The Arizona Court of Appeals found:

Defendant's initial appearance took place on May 3, 2007, and his preliminary hearing was scheduled for May 14, 2007. Defendant argues that ten days from May 3 was May 13 and that the preliminary hearing should have occurred by that date. However, May 13, 2007 was a Sunday. Pursuant to Arizona Rule of Criminal Procedure 1.3, when the last day of a period is a Saturday, Sunday, or legal holiday, "the period shall run until the end of the next day which is neither a Saturday, Sunday nor a legal holiday." Thus, the preliminary hearing was scheduled within the ten day period.

*Dudley*, 2012 WL 724059, at *3. The court also found "Defendant's argument is of no consequence, however, because the preliminary hearing was vacated due to a supervening indictment." (*Id*.)

Petitioner's claim is meritless. Petitioner's preliminary hearing was properly set, and Petitioner may not contest state procedural rules regarding preliminary hearing and indictment on habeas review. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir.1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules.").

### h. Ground Eight

Petitioner alleges his PCR counsel (Mr. Gorman) was ineffective, in violation of his Fourteenth Amendment rights, for failing to allege four of his prior attorneys provided ineffective assistance of counsel. To succeed on a claim of ineffective assistance of

counsel, Petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in counsel's performance prejudiced him. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). To establish prejudice, the defendant "must show a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Petitioner's claims fail for several reasons. The Supreme Court has held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted). Moreover, Petitioner raised these claims in his *pro se* PCR petition, (Doc. 19-2, Ex. G, at 2; Doc. 19-3, Ex. Q, at 2), and the Arizona courts found the claims to be meritless. Assuming PCR counsel did not raise the claims, Petitioner was not prejudiced because the arguments were decided by the state courts. Petitioner's claims also fail on the merits.

### i.  Trial Counsel (Mr. Valverde)

Petitioner alleges PCR counsel (Mr. Gorman) was ineffective when he failed to allege trial counsel (Mr. Valverde) was ineffective for failing to file a motion to dismiss the indictment based upon lack of venue. (Doc. 1 at 16.) Petitioner raises this claim in Ground One of the Petition. The Court finds Ground One lacks merit, and thus PCR counsel was not ineffective for failing to raise this claim on PCR review. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (citations omitted)). Therefore, the Court finds that Petitioner is not entitled to relief on this claim.

### ii.  Trial Counsel (Mr. Goldstein)

Petitioner alleges PCR counsel (Mr. Gorman) was ineffective when he failed to allege trial counsel (Mr. Goldstein) was ineffective for allowing Petitioner to "participate

in a freetalk without the aid of counsel. . . ." (Doc. 1 at 16.) The trial court determined: "During the 'free talk', Defendant at no point indicated that he did not wish to speak to the detective. The Defendant initiated the telephone conversation." (Doc. 19-3, Ex. R, at 35.) Petitioner presented no argument in his trial court PCR that he was prejudiced by this conduct. Petitioner cannot prevail on an allegation of ineffective assistance of counsel unless he demonstrates prejudice. This exhausted claim fails.

In his Reply, Petitioner expands upon his argument that he provided information to the State about a criminal defense attorney (Jason Keller) and 18 Mexican Mafia members, which led to prosecutions. (Doc. 25-1 at 14.) Petitioner argues that if he had a freetalk agreement, then he would have been "compensated" but instead he "did not receive anything." (*Id*.) Petitioner claims that if "attorney Goldstein accompanied Petitioner on his free talk there's a strong chance that Petitioner would have received some kind of benefit…." (Doc. 25-1 at 15.)  This claim is unexhausted and procedurally defaulted. Petitioner did not argue prejudice to the trial court or the Arizona Court of Appeals. (*See* Doc. 19-3, Ex. Q at 20; Doc. 19-4, Ex. S, at 6.)

Petitioner's claim nonetheless fails on the merits because the trial court was advised of Petitioner's cooperation and considered it. At sentencing, Petitioner's counsel told the trial court: "He has really put himself on the line, because he's going to be living with the people in close proximity that he has basically turned into the police." (Doc. 19-7, Ex. S, at 39.) The trial court stated: "And I do agree that I think in dealing with members of the Mexican Mafia, you do put yourself at exceptional risk within the prison system and so on when you take on a group as highly organized as that." (*Id*. at 44.) The trial court also discussed Petitioner's desire to cooperate against attorney Keller, and determined the State was within its discretion to decline that cooperation. (*Id*.) Ultimately, Petitioner's cooperation was disclosed to the trial court, even if Petitioner's attorney (Mr. Goldstein) did not accompany him to a freetalk. There was no prejudice, and Petitioner is not entitled to relief on this claim.

Petitioner also alleges PCR counsel (Mr. Gorman) was ineffective when he failed

to allege trial counsel (Mr. Goldstein) was ineffective for failing to interview witness Jason Gerrich. (Doc. 1 at 16.) The trial court denied this claim, finding: "The decision whether to interview witnesses, file motions, call witnesses at trial or which defenses to pursue is a matter of trial strategy and unless counsel has no reasonable basis, cannot constitute ineffective assistance of counsel." (Doc. 19-3, Ex. R, at 35.) Before the trial court and the Arizona Court of Appeals, Petitioner failed to argue how he was prejudiced by this failure. Petitioner's claim before both courts was "Attorney Goldstein was ineffective for not interviewing state's witnesses Jason Gerrich and Michael Bryant." (*See* Doc. 19-3, Ex. Q at 24; Doc. 19-4, Ex. S, at 9.) Petitioner's claim that he was prejudiced by this failure was not raised before the State courts, and is unexhausted and procedurally defaulted.

Petitioner now argues prejudice because "Mr. Gerrich testified to witnessing the whole crime and no robbery occurred." (Doc. 1 at 16.) In his Reply, Petitioner adds that "when Mr. Gerrich was on the witness stand 'he testified that he saw the entire crime and Petitioner did not rob the victim' (that testimony is not in the trial transcripts)." (Doc. 25-1 at 16.) Petitioner fails to establish that the trial transcripts are inaccurate. (*See* Ground Five.) Moreover, a review of the transcript of Mr. Gerrich's testimony does not support Petitioner's claim. Mr. Gerrich testified that the Petitioner was "screaming" at the victim to "[g]ive me my money." (Doc. 19-10, Ex. Y, at 60.) Mr. Gerrich testified Petitioner did not punch the victim and that "she dropped to the ground and just stayed there kind of like almost in a fetal position." (Doc. 19-10, Ex. Y, at 63.) Petitioner's claim regarding Mr. Gerrich is meritless because Mr. Gerrich's testimony was not favorable to Petitioner. Therefore, there was no reasonable probability of a different outcome if counsel had interviewed Mr. Gerrich.

### iii.  Trial Counsel (Ms. Schaffer)

Petitioner alleges PCR counsel was ineffective when he failed to allege trial counsel (Ms. Schaffer) was ineffective for (1) entering into an agreement with the State without informing Petitioner, and (2) not objecting to Petitioner's 17-year aggravated

sentence. (Doc. 1 at 16.)

Petitioner alleges Ms. Schaffer (sentencing counsel) was ineffective "for entering into an agreement with the Maricopa County Attorney's Office for Petitioner to return to ADOC at a later date and testify for the State without informing the Petitioner of the agreement." (Doc. 1 at 16-17.) In his Reply, Petitioner asserts he "was to testify against one of ex-attorney Jason Keller's codefendant's John Farinas." (Doc. 25-1 at 18.) Petitioner claims he refused to testify "because he was not getting any deal." (*Id*.) He alleges there was a secret agreement regarding his testimony because when "Petitioner was on the witness stand he overheard an attorney from the Attorney General's Office tell another attorney 'why would he refuse to testify?'" (*Id*.) In his petition for review to the Arizona Court of Appeals, Petitioner attached several of Ms. Schaffer's emails regarding whether Petitioner would be needed as a witness against Mr. Keller and codefendants. (*See* Doc. 19-7, Ex. S, at 13-18.) The emails demonstrate Ms. Schaffer was diligently working on Petitioner's case to attempt to secure opportunities for him to cooperate. The records do not reflect a secret agreement, or that Petitioner was prejudiced in any way.

Petitioner also alleges Ms. Schaffer was ineffective for "not objecting when Judge Anderson sentenced Petitioner to an aggravated 17 year prison sentence when his mitigating factors outweighed his aggravating factors. . . ." (Doc. 1 at 17.)  Under federal law, counsel is not required to object to a court's imposition of sentence. *See* Fed.R.Crim.P. 51(a) ("Exceptions to rulings or orders of the court are unnecessary" to preserve claims of error); *United States v. Enriquez*, 548 F. App'x 473 (9th Cir. 2013) (unpublished) (finding Defendant "was not required to lodge a further objection or exception to the court's ruling in order to preserve his challenge" to the sentence imposed).  Sentencing counsel was not required to object to preserve Petitioner's sentencing claims.  Therefore, Petitioner has not established counsel was ineffective.

In his Reply, Petitioner raises a new claim that Ms. Schaffer "failed to request a mitigation specialist." (Doc. 25-1 at 17.) The Arizona Court of Appeals determined (1) Petitioner identified "no error in the trial court's review," and (2) this claim, among

others, warranted "summary rejection." *Dudley*, 2014 WL 3732476, at *2. Whether the state court properly weighed aggravating and mitigating factors under state law is not reviewable here. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Petitioner also fails to establish how the trial court's slightly aggravated sentencing decision was an objectively unreasonable application of clearly established United States Supreme Court precedent. Petitioner's claim fails.

### iv.  Appeal counsel (Ms. Terpstra)

Petitioner asserts appellate counsel (Ms. Terpstra) was ineffective when she "abandoned her adversarial position as Petitioner's agent in opening brief" by acknowledging Petitioner admitted multiple prior felony convictions and that he was represented by counsel in his Massachusetts case. (Doc. 1 at 17-18.) Petitioner does not deny having multiple prior felony convictions or that he was represented by counsel in his Massachusetts case. Instead, Petitioner now claims that his counsel was not present on the day of plea and sentencing in Massachusetts. For the reasons outlined in Ground Three above, Petitioner's claim fails. Appellate counsel was not ineffective.

### i.  Ground Nine

Petitioner re-alleges the following arguments, but alleges a violation of his Sixth Amendment rights: counsel Goldstein did not attend a freetalk between Petitioner and police (Ground Eight) and did not interview witness Gerrich (Ground Eight). The Court determined that counsel was not ineffective regarding these issues, and these arguments are denied for the reasons outlined above.

Petitioner also alleges "Judge Anderson never ruled on whether or not Petitioner had counsel in his Massachusetts prior conviction." (Doc. 1 at 20.) Petitioner alleges that if counsel Goldstein had "objected at the 4-28-08 ruling" then "there is a reasonable probability of a different outcome."  (*Id.*)  But counsel did object to the admission of the prior at the April 28, 2008 hearing. One of the "defects" of the Massachusetts prior that counsel argued to the court was that "there's nothing in those – either of the Massachusetts priors that states a defendant was represented by duly appointed counsel

and had access to counsel as he would here in Arizona. . . ." (Doc. 19-13, Ex. BB, at 32.) The trial court found the prior conviction qualified to enhance Petitioner's sentence, and thus implicitly overruled counsel's argument. (Doc. 19-1, Ex. C, at 14.) Assuming arguendo the court did not explicitly rule on the motion, it was still denied. *See State v. Hill*, 848 P.2d 1375, 1385 (Ariz. 1993) ("A motion that is not ruled on is deemed denied by operation of law.").

The Court determined, in Ground Three, that Petitioner failed to overcome the "presumption of regularity" that attached to his Massachusetts conviction.  Even if counsel was required to object to the trial court's failure to rule, Petitioner fails to establish prejudice. Petitioner had no additional information to present to the trial court other than his avowal, which is insufficient.[7]

### j.  Ground Ten

Petitioner re-alleges the following arguments, but alleges a violation of his Sixth Amendment rights: counsel failed to object to venue (Ground One) and cumulative error (Ground Two). (Doc. 1 at 21.) Petitioner's claims are meritless for the reasons explained above.

### k.  Ground Eleven

Petitioner re-alleges the following arguments, and alleges a violation of his Fourteenth Amendment rights: counsel Terpstra was ineffective for failing to object on appeal to the Massachusetts prior conviction (Ground Eight); counsel "should have raised lack of venue in the indictment" (Ground One); and, counsel should have argued Petitioner's preliminary hearing was improperly vacated (Ground Seven). Petitioner's claims fail for the reasons outlined above.

### l.  Ground Twelve

Petitioner re-alleges the following arguments, and alleges a violation of his Sixth

---

[7] In a response to Petitioner's Motion for Reconsideration (Doc. 19-2, Ex. I, at 40), the court found Petitioner "has not offered any credible evidence that he was not represented by counsel in his prior conviction to overcome the presumption of regularity" (Doc. 19-2, Ex. J, at 51).

Amendment rights: counsel Schaffer (1) improperly entered an agreement for Petitioner to cooperate against others (Ground Eight); (2) failed to hire a mitigation specialist (Ground Eight); (3) failed to object to an aggravated sentence (Ground Eight). (Doc. 1 at 24.) Petitioner's claims fail for the reasons outlined above.

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are timely, but procedurally defaulted or meritless. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and

Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 4th day of April, 2016.

Honorable John Z. Boyle
United States Magistrate Judge